UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARTI S.,[1]

      Plaintiff,

v.                              Civil Action No. 2:22-cv-400

KILOLO KIJAKAZI
ACTING COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

<u>REPORT AND RECOMMENDATION</u>

      Plaintiff Marti S. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") under the Social Security Act ("the Act"). Specifically, Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") improperly evaluated medical opinion evidence from Plaintiff's treating psychiatrist. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes the ALJ adequately considered the medical opinion evidence in the record, and therefore recommends that the court deny Plaintiff's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

motion for summary judgment and affirm the final decision of the Commissioner.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB under Title II of the Act on February 26, 2020.  (R. 127).  She alleged disability beginning July 19, 2019, based on fibromyalgia, PTSD, anxiety, fatigue syndrome, sleep apnea, irritable bowel syndrome ("IBS"), migraines, aura, degenerative disc disease, chronic sinus infections, arthritis, depressive disorder, insomnia, lower back pain, two plates in spine, rheumatism, foot pain, and radiculopathy in lower left leg.  (R. 128, 140, 244).  The state agency denied her application initially and on reconsideration.  (R. 158–61, 169–72).  Plaintiff then requested an administrative hearing.  (R. 173–74).  The hearing was held on April 11, 2022.  (R. 54–101). Counsel represented Plaintiff at the hearing, and an impartial vocational expert ("VE") testified.  Id.  On May 3, 2022, the ALJ denied Plaintiff's claim for DIB, finding she was not disabled during the period alleged.  (R. 30–48).  The ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 33–37).  The ALJ also found that Plaintiff's RFC permitted her to work within the national economy.  (R. 47).  On July 29, 2022,

the Appeals Council denied Plaintiff's request for review.   (R. 19-21).

On September 26, 2022, Plaintiff filed her complaint in this court.   Compl. (ECF No. 1).   She seeks judicial review of the Commissioner's final decision that she was not disabled, claiming that "[t]he agency committed error of law by denying Appeals Council review of the decision by the Administrative Law Judge" and that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation."   Id. ¶¶ 4, 8 (ECF No. 1, at 2).   On March 8, 2023, Plaintiff moved for summary judgment.   (ECF No. 12).

Plaintiff argues that the final agency decision should be vacated and thereafter remanded because the ALJ "failed to properly evaluate the opinion of treating Psychiatrist William McDaniel." Pl.'s Mem. Supp. Soc. Security Appeal ("Pl.'s Mem.") (ECF No. 13, at 1).   On April 6, 2023, the Commissioner opposed Plaintiff's motion.   (ECF No. 15).[2]   The Commissioner argues that the ALJ "properly considered Dr. McDaniel's opinion in accordance with the

---

[2] In opposing Plaintiff's motion, the Commissioner did not move for summary judgment. However, under the new Supplemental Rules for Social Security Actions, effective December 1, 2022, appeals from final decisions of the Social Security Administration are presented for decision by the parties' briefs. Supp. R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5. As both parties have filed their briefs on this matter pursuant to the undersigned's Briefing Order, (ECF Nos. 9; 11), this matter is ripe for review notwithstanding the absence of cross-motions for summary judgment. To the extent the Commissioner's brief, Def.'s Opp'n (ECF No. 15), seeks summary judgment in the Commissioner's favor, this Report, recommends that the court GRANT the motion.

applicable regulations and provided reasons, supported by the record, for why he found it unpersuasive." Def.'s Br. Supp. Decision Denying Disability Benefits & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 15, at 17). Plaintiff replied. (ECF No. 16). After a review of the record, this Report considers each of these arguments.

## II.   FACTUAL BACKGROUND

Plaintiff was born on July 26, 1972, and at the time of the ALJ's decision, she was 49 years old. (R. 127). Plaintiff meets the insured status requirements under the Social Security Act until December 31, 2024. (R. 128). She has not engaged in substantial gainful activity since July 19, 2019, the alleged onset date. (R. 128-29, 140). She completed four or more years of college and reported some past work as a zoning inspector in Kent County, Delaware (2001-2019) and as a C-17 Loadmaster for the United States Air Force Reserves (1996-2019). (R. 129, 137, 151, 251).

### A.   Plaintiff's Health Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history as she disputes only the ALJ's assessment of certain medical opinions. The treatment Plaintiff received, as relevant to the instant motion, is outlined below.

#### 1.   VA Treatment

Throughout the alleged period of disability, Plaintiff primarily treated with mental health providers at various VA

4

medical centers.  In particular, she frequently treated with VA psychiatrist William McDaniel.

On July 30, 2019, soon after Plaintiff's alleged disability onset date (July 19, 2019), Plaintiff was seen as a walk-in patient at the Hampton VA Mental Health Connect clinic.  (R. 2140).  This clinic provides brief mental health triage, same-day service.  Id. Plaintiff met with resident doctor Sean Closs and reported depression and anxiety.  (R. 2140-41).  Plaintiff shared that she moved from Dover, Delaware the past week, and recently retired as a United States Air Force loadmaster on a C-17.  (R. 2140). Plaintiff reported that she was happy to be retired, and that her mother and stepfather live in town.  (R. 2141).  Plaintiff also shared that she was going out that night with friends in town. Id.

In regard to her mental health, Plaintiff reported that her depression in the past was "primarily around work and giving up activities like boating due to her back." Id.  Further, Plaintiff shared she was "[u]nsure if [her] anxiety is just about [her] move or other things." Id.  During the mental examination, Dr. Closs observed that Plaintiff was clear, coherent, alert, oriented, in a pleasant mood, and had intact judgment and insight. Id. Psychiatrist Ameliann Williams reported that Plaintiff was abusing alcohol and drinking more than recommended.  (R. 2142).  Further, Dr. Williams reported that Plaintiff's depression was better, but

increased Plaintiff's duloxetine prescription to help with anxiety and rumination.  Id.  Dr. Williams placed a consult for the Virginia Beach, VA Community Based Outpatient Clinic ("CBOC"). Id.

The next month, on August 8, 2019, Plaintiff was seen at the Virginia Beach CBOC mental health clinic.  (R. 2123).  Plaintiff was evaluated by psychiatrist Jose R. Pereira.  (R. 2126). Plaintiff presented for a new patient visit, and reported anxiety, poor sleep, and an intermittent depressed mood.  (R. 2125). Plaintiff reported no history of psychiatric treatment.  (R. 2124). During the examination, Plaintiff was awake and alert, properly dressed and groomed, cooperative, and pleasant.  (R. 2125).  Dr. Pereira reported Plaintiff's diagnoses as post-traumatic stress disorder, major depressive disorder, insomnia with sleep apnea (Plaintiff opted out of CPAP treatment), and chronic pain related to migraines and fibromyalgia.  Id.

On October 9, 2019, Plaintiff had a follow-up appointment at the Virginia Beach VA clinic for her mental health.  (R. 2106). There, Plaintiff was seen by Dr. McDaniel, who thereafter became her primary treating psychiatrist.  Id.  Dr. McDaniel evaluated Plaintiff's records and noted she was diagnosed with PTSD and depression.  (R. 2109).  However, Plaintiff denied depression or manic systems.  Id.  Plaintiff also reported no problems with sleep and stated she was taking her prescribed medication and did not

have any side effects.  Id.  Dr. McDaniel described Plaintiff as casually dressed, pleasant, cooperative, alert, and oriented.  Id. Plaintiff's insight and judgment were not impaired, and her thoughts were well organized.  Id.

A few months later, on January 8, 2020, Nykia Tracy, R.N. entered an outpatient screening note in preparation for Plaintiff's scheduled visit.  In the note, Tracy recorded Plaintiff's concerns of increased anxiety since the holidays.  (R. 1214).  Plaintiff stated that her father seems to be the trigger of her anxiety and that her only coping skill was shopping.  (R. 1216).  Plaintiff also stated she avoids leaving her house "at times to avoid crowds due to her anxiety."  Id.  Plaintiff reported that she was compliant with her medication, but her anxiety was worsening.  Id.

On February 25, 2020, Plaintiff was treated by psychiatrist Mikiso Mizuki, M.D., at the Hampton VA Medical Center.  (R. 1171). There, Plaintiff reported difficulty with memory and a mental fog. Id.  Plaintiff reported that her depression was a 2-4 out of 10. (R. 1172).  Plaintiff stated she was spending time with her dog and reading for fun.  Id.  Plaintiff lamented that she was spending too much money and was in significant credit card debt.  Id.

The following month, on March 19, 2020, Plaintiff stated in an email to the Hampton VA Medical Center that she was having pain in her lower back and back spasms.  (R. 1163).  Plaintiff stated

that she was "walking every day around the lake with [her] puppy, to get out of the house." Id.  Further, Plaintiff reported that the walk is "about 2.8 miles," and that her "back tightens up" but that she is able to "stop and stretch and keep going." Id.  In the same email, Plaintiff stated that she played four games of cornhole over the weekend and socialized with friends.  Id.  Plaintiff reported that she was very tired after the social event, was unable to go out later that evening with her friends, and was seeking suggestions on how to function more normally.  Id.  In response, Melissa Ann Palka stated Plaintiff needs "Yoga," and "no social parties until the pandemic passes." Id.

On April 7, 2020, Plaintiff had an appointment over-the-phone with Dr. McDaniel.  (R. 2048).  During the call, Plaintiff was out shopping and denied depression symptoms, denied issues with sleep, and was taking her medication as prescribed.  Id.  As a follow-up to this appointment, on April 9, 2020, Plaintiff left a message for Dr. McDaniel with Nykia Tracy, R.N., and stated that she forgot to mention she recently applied for disability benefits and was looking for a "workbook program" to help with her anxiety and anger.  (R. 2042).  Tracy mentioned anger management, but Plaintiff declined "due to social anxiety." Id.

On June 1, 2020, Plaintiff was treated by Dr. McDaniel for a follow-up regarding bipolar depression.  (R. 1146).  During the discussion, Plaintiff mentioned that she stopped taking her

8

lamotrigine prescription for a few weeks.  Id.  Following the appointment, Dr. McDaniel prescribed re-titrate lamotrigine to Plaintiff.  Id.  On exam, Plaintiff was alert, fully oriented and cooperative.  Id.  Dr. McDaniel noted her affect was mildly elevated and her mood was anxious.  Id.  Dr. McDaniel reported Plaintiff was fully oriented and cooperative and her judgment was adequate for safety.  Id.

On July 22, 2020, Plaintiff met with Dr. McDaniel for a video telehealth appointment.  (R. 1101).  Plaintiff was back on her medication and was tolerating her dosage well.  Id.  Dr. McDaniel increased her prescription dosage.  Id.  Plaintiff stated she "felt very threatened" recently when her ex-spouse came to her home and threatened her and her children.  (R. 1101).  Since this encounter with her ex, Plaintiff was having "more trouble sleeping."  Id.  On exam, Dr. McDaniel found that Plaintiff was cooperative, neatly groomed, and "tanned from taking [the] kids to the beach."  Id.  Plaintiff was "anxious more than depressed today."  Id.

On August 4, 2020, Plaintiff attended a telehealth video visit with the Hampton VA Medical Center and Kimberly McKissack, N.P. (R. 787).  Plaintiff described foot pain, chronic back pain, and pelvic pain.  (R. 788).  Plaintiff reported that her migraines had decreased, and that her medication for migraines was effective. Id.  Plaintiff also reported increased fibromyalgia, depression, and anxiety.  (R. 788–89).  Plaintiff stated she was experiencing

a decrease in her energy levels and increased anxiety when separated from her pet. (R. 788). The nurse practitioner recommended Plaintiff obtain an emotional support animal certificate, and recorded that Plaintiff had a stable mood and was pleasant and cooperative. (R. 788-89).

On September 23, 2020, Plaintiff reported to Dr. McDaniel for a follow-up appointment and told him she was having a "rough week" because she was dealing with deaths among both family and friends as well as difficulty reaching her healthcare providers. (R. 1371). Plaintiff said she was particularly anxious about the risks of COVID-19 because she was planning to travel over the next two months to Colorado. Id. Plaintiff's daughter was considering moving to Colorado over the next year. Id. Plaintiff expressed that the addition of Aripiprazole had been helpful, and that she would like to consider further dose increases. Id. Plaintiff also stated interest in beginning psychotherapy but was unable to make use of a specialized PTSD program due to comorbidity with bipolar affective disorder ("BPAD"). Id. The treatment notes indicate Plaintiff' was cooperative and her speech was spontaneous and normal in rate and rhythm. Id. Plaintiff's affect was constricted with mood depressed as much as anxious. Id. Plaintiff's thoughts were logical and there was no evidence suggesting psychotic thought content. Id. Plaintiff's insight was noted to be remarkable for use of displacement as a defense

mechanism.  Id.  Dr. McDaniel recommended a gradual dose increase in Plaintiff's Aripiprazole for mood and anxiety.  (R. 1372).

Plaintiff met with Dr. McDaniel again on November 23, 2020. (R. 1338).  Plaintiff reported that she was enjoying playing with her new puppy.  Id.  Dr. McDaniel noted Plaintiff remained healthy and was getting healthier.  Id.  Plaintiff reported walking more with her new puppy.  Id.  Plaintiff discussed her trip to Colorado and shared that she obtained cannabinoids which helped with her pain and emotional regulation.  Id.  Plaintiff also stated that she volunteered to help pack holiday food boxes for homeless veterans.  Id.  Plaintiff denied current flashbacks and stated that her nightmares were less frequent.  Id.  Dr. McDaniel noted that her affect was constricted, once tearful, and her mood was anxious and depressed.  Id.  Plaintiff's thoughts were circumstantial, and her insight was remarkable for use of displacement, dissociation, and isolation of affect as defense mechanisms.  Id.

On February 9, 2021, Plaintiff attended a telehealth video appointment with Dr. McDaniel.  (R. 1602-03).  Plaintiff denied depressive symptoms, but shared she was "feeling overwhelmed keeping track of all her appointments and trying to get some relief for chronic pain."  (R. 1603).  Plaintiff presented with "a good bit of anxiety," and discussed "her circle of loving pets who pay attention to her and how she feels."  Id.

On May 25, 2021, Plaintiff again met with Dr. McDaniel for a telehealth video appointment. (R. 1778). At the time, Plaintiff was vacationing in Florida, and mentioned that she received an invitation to attend a friend's retirement party in Delaware. Id. Plaintiff reported chronic pain but stated that her medications were helping. Id. Plaintiff also stated she was anxious about her travels, but that her depressive symptoms have improved with treatment. Id. On exam, Plaintiff was cooperative, and her mood was anxious and depressed. Id.

Plaintiff had another video telehealth appointment with Dr. McDaniel on November 23, 2021. (R. 2855). Plaintiff reported "worrying about many things: her weight, her sleep apnea, her Disability rating." Id. Plaintiff stated she was planning a trip to visit a friend in Florida in December, and that she reached out to a friend to attend a concert. Id. On exam, Dr. McDaniel opined Plaintiff was cooperative, her mood was anxious more than depressed, and her thoughts were logical and goal directed. Id.

On December 10, 2021, at the request of Dr. McDaniel, Plaintiff was evaluated by the VA's Women's Mental Health Behavioral Health Interdisciplinary team. (R. 2652). During the exam, Plaintiff "reported that since taking medication, she has been able to manage her symptoms of depression and anxiety well; however [she] continues to report fluctuations in mood, motivation, negative thoughts, appetite, and sleep difficulties."

(R. 2653).   Plaintiff stated that her fibromyalgia and chronic pain contribute to her depressive symptoms and impact her ability to work.  Id.  Plaintiff specifically stated that she "can't stand too long, [and] there are certain chairs [she] can't sit in." Id. Plaintiff stated that she was on vacation last week.  (R. 2657). Plaintiff also stated that she was babysitting animals for work. Id.   In regard to her impulse control, Plaintiff shared that "spending money is a thrill-seeking behavior that she uses to cope with stress."   (R. 2653).   The Women's Health Team referred Plaintiff to the Wonder Woman Group for therapy and to a Relaxation Group.   (R. 2661).   In January and February 2022, Plaintiff attended group therapy sessions.   (R. 2791–92, 2802–05, 2809–10, 2817–18).  In general, Plaintiff interreacted well with the groups. Id.

**B.   Opinion Testimony**

### 1.   State Agency Consultative Examiners

#### a.   Howard Leizer, Ph.D.

On February 11, 2021, as part of Plaintiff's initial DIB determination, state agent psychologist Howard Leizer, Ph.D., conducted a review of Plaintiff's medical records.   (R. 131–32, 136–37).  Dr. Leizer opined that Plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself.  (R. 132).  Dr.

Leizer formed a mental RFC ("MRFC") accounting for these limitations. (R. 136-37).

Dr. Leizer reported that Plaintiff's tasks should be limited to those "that involve simple duties in standardized situations with minimal variations." (R. 136). These tasks should "involve providing simple directions or answering simple questions." Id. Dr. Leizer also found that Plaintiff is not significantly limited in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," but she is limited to "tasks that generally require dealing with things rather than people." (R. 136-37). Dr. Leizer concluded that Plaintiff Plaintiff's "mental limitations do restrict functional capabilities to some degree but basic adaptive capacities and the ability to perform at a level reflected by this MRFC assessment remain." (R. 137).

### b.   Stephen Saxby, Ph.D.

On October 29, 2021, when Plaintiff's claim for DIB was pending at the reconsideration level, state agency psychologist Stephen Saxby, Ph.D., conducted a review of Plaintiff's medical record. (R. 145-47, 150-51). Dr. Saxby, unlike Dr. Leizer, found that Plaintiff (1) does not have understanding and memory limitations; (2) does not have social interaction limitations because, for example, she is "[a]ble to participate[,] party and

go on vacation"; and (3) does not have adaptation limitations.[3]
(R. 150-51). Nonetheless, Dr. Saxby concurred with Dr. Leizer's
finding that Plaintiff's limitations confine her to tasks "that
involve simple duties in standardized situations with minimal
variations." (R. 150). Additionally, consistent with Dr. Leizer's
finding, Dr. Saxby found that Plaintiff has limitations in
concentration and persistence which "limits her to tasks that
involve providing simple directions or answering simple question."
Id. In sum, Dr. Saxby agreed with Dr. Leizer's finding that
Plaintiff is capable of performing tasks within the confines of
her mental limitations. (R. 150-51).

### 2. Plaintiff's Treating Providers

#### a. Dr. McDaniel's Opinion

On March 30, 2022, Dr. McDaniel completed a medical evaluation
report, which is a checkbox form listing certain questions about
Plaintiff's work capabilities. (R. 3114-15). On the form, Dr.
McDaniel summarized patient's impairments as complex PTSD and
bipolar depression. (R. 3114). Dr. McDaniel further noted,
regarding Plaintiff's prognosis, "[t]o date, [she] has a
deteriorating course." Id.

---

[3] Although Dr. Saxby initially indicated Plaintiff was mildly limited in
adapting and managing herself, (R. 146), his subsequent MRFC
determination indicates Plaintiff had no such limitations. (R. 151).

The checkbox form contains four primary categories: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. (R. 3114-15). Within each category, Dr. McDaniel notes whether Plaintiff has a mild, moderate, marked or extreme limitation.[4] (R. 3114).

In the first category concerning understanding and memory, Dr. McDaniel found Plaintiff has no limitations in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember short and simple instructions; and the ability to understand and remember detailed instructions. (R. 3114).

In regard to sustained concentration and persistence, Dr. McDaniel found Plaintiff has mild limitations in both the ability to maintain attention and concentration for extended periods; and the ability to make simple work-related decisions. Id. In the same category, Dr. McDaniel observed that Plaintiff has moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in the ability to sustain an ordinary routine without supervision. Id. Finally, here, Dr. McDaniel concluded Plaintiff has a marked limitation in the ability to work in

---

[4] The medical evaluation report contains definitions for marked and extreme limitations. (See R. 3114).

coordination with or proximity to others without being distracted by them.  Id.

With regard to the social interaction category, Dr. McDaniel found Plaintiff has both mild and moderate limitations.  (R. 3115). Specifically, Dr. McDaniel indicated Plaintiff has mild limitations in the ability to ask simple questions or request assistance; and in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Id.  Dr. McDaniel found Plaintiff has moderate limitations in the following areas: the ability to interact appropriately with the general public; the ability to accept instructions or respond appropriately to criticism from supervisors; and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  Id.

Finally, in the adaptation category, Dr. McDaniel concluded Plaintiff has marked and extreme limitations.  Dr. McDaniel opined Plaintiff has marked limitations in the ability to respond appropriately to customary stresses in a work setting; and in the ability to be aware of normal hazards and take appropriate precautions.  Id.  Dr. McDaniel found Plaintiff had extreme limitations in her ability to travel in unfamiliar places or use public transportation; and in the ability to set realistic goals or make plans independently of others.  Id.

**C.    Testimony Before the ALJ**

At the hearing on, April 11, 2022, the ALJ heard testimony from Plaintiff and impartial VE, Dana Marmo.  (R. 30, R. 54-101).

**1.    Plaintiff's Testimony**

On direct questioning by the ALJ, Plaintiff testified that she is single and lives alone with her dog and cat.[5]  (R. 60). Plaintiff has a bachelor's degree, and she pursued a master's degree but did not complete her coursework.  Id.  Plaintiff stated that she walks and cares for her dog, obtains food for herself, and babysits "outside with the neighbors."  (R. 88).  In regard to her two-story home, Plaintiff stated her mother, neighbor, and stepfather help her clean and declutter.  Id.

Plaintiff testified that she has a driver's license, and that she drives herself to physical therapy and other local appointments.  (R. 60, 88-89).  Plaintiff explained that her mother "drives most of the time" to other appointments including her allergy treatments in Newport News.  (R. 88).  Plaintiff testified that she attends relaxation classes, a whole health class, and physical therapy classes.  (R. 84).  Plaintiff also mentioned that she "want[s] to start a Tai-chi class to learn just flow and steady movements."  Id.  Outside of her appointments, Plaintiff testified that she does "get out of the house," and that she either drives

---

[5] During medical treatment, Plaintiff stated she has an adult daughter. (R. 1371).

and picks up her mother, or her mother comes to her home and drives them both. (R. 76). Plaintiff shared that she tries to travel, and has a trip planned for "later this month" to Florida. (R. 76-77).

Regarding her work history, Plaintiff testified that she served in the Air Force Reserves and worked as a city code enforcement officer/zoning inspector. (R. 61-72). Plaintiff "accrued 20 years of good years" in the Reserves and was a zoning inspector for approximately 18 years. Id.

As to her medical history, Plaintiff testified that she has daily problems with fatigue, depression, and fibromyalgia-related pain. (R. 78-79). Plaintiff stated that in 2019 "the depression caught up" to her and her "anxiety had built up." (R. 74). As a result, she sold her house in Delaware and moved to Virginia where she could be close to family. Id. Plaintiff also testified that she experiences PTSD symptoms as a result of her time with the Army Reserves and transporting soldiers' remains. (R. 81-82). Plaintiff testified that she is unable to work because she is "not reliable," her memory is "horrible," and she has too many medical appointments. (R. 84-86). Plaintiff testified that as an inspector, she would miss at least two days a month because she "was exhausted" and the job was "a soul suck." (R. 85). Plaintiff also testified that she has difficulty handling stress, and she experiences daily pain throughout her body. (R. 86).

During her testimony, Plaintiff said her friend visited her the past weekend by surprise, and that she "got up at 8, made some coffee, let the dog out," and watched television with her friend. (R. 78). Plaintiff testified that she fell asleep twice while sitting in her home with her friend, and generally described difficulties with sleep and exhaustion. (R. 78-80).

### 2.   Testimony from the VE

The VE characterized Plaintiff's prior work as (1) a code inspector and (2) a member of the Air Force Army Reserves.

First, the VE considered Plaintiff's work from 2001-2019 as a code inspector. (R. 92). The VE characterized her position as "DOT number 168.367-018, exertional level light, as performed by the claimant, light, with an SVP of 5." Id. Second, the VE characterized Plaintiff's "work in the United States Air Force Reserves. . . as a composite position" because the Dictionary of Occupational Titles "fail[s] to meet the specific requirements of a loadmaster." Id. The VE testified Plaintiff's position would be a composite of "flight engineer, DOT number 621.261-018, exertional level light, as performed by the claimant heavy, with an SVP of 7" and "freight loading supervisor." Id. The VE noted that the latter classification is specifically related to railroads, and that the DOT lacks a relevant designation for aircraft loaders. Id. Nonetheless, the VE testified that the duties as listed in the DOT are very similar to what would be

required of a loadmaster, and thus sufficed for Plaintiff's composite position. Id.

At the hearing, the ALJ's hypothetical to the VE posited a person with the same age, education, and work experience as Plaintiff who was capable of "perform[ing] up to and including a light level of activities" with the following maximum capabilities:

> She could only occasionally climb stairs, stoop, kneel, and crouch. She should never climb ladders or crawl. She should have no more than frequent exposure to extreme cold, heat, or wetness and humidity. She should have no exposure to sustained loud noises or to bright lights. She should have no exposure to vibration, fumes, gases, or pulmonary irritants, or exposure to workplace hazards, such as unprotected heights and dangerous machinery. I would limit her to frequently but not always reaching overhead with the left arm and only occasionally reaching overhead with the right arm. She could frequently but not always twist the lumbar spine. That's the lower back. I would also limit her to standing or walking only four hours total in an eight-hour workday. So this is a limited light. I would also limit her to non-production-paced tasks as to tempo and capacity. Essentially, non-assembly type work. Limited to maintaining a persistent effort on only routine tasks. And I would note that although this is not limited to simple or repetitive routine tasks, I think the persistence effort is different with regards to routine tasks. And finally, she must have reasonable access to a restroom, either the same floor or in an office setting.

(R. 93-94). The VE testified that the following jobs in the national economy would be available to such a person: garment sorter (DOT 222.687-014) with 200,000 jobs nationally; information clerk (DOT 237.367-018) with 50,000 jobs nationally; and price

marker (DOT 209.587-034) with 50,000 jobs nationally.  (R. 96).
The ALJ further asked the VE to "reduce that to sedentary. . .
with the exception of the four hours standing, walking. . ." and
provide any job examples at the sedentary level.  Id.  The VE
responded that such a person could be a credit card clerk (DOT
205.367-014) with 200,000 jobs nationally; a call-out operator
(DOT 237.367-014) with 150,000 jobs nationally; and a document
preparer (DOT 249.587-018) with 100,000 jobs nationally.  (R. 96-
97).  In response to the ALJ's follow-up questions, the VE
testified that the listed jobs would not tolerate an employee being
off task "5% or more" of the time during daily productivity.  (R.
98).  The VE further testified that "an employer will not tolerate
more than one unexcused or unscheduled absence per month."  Id.

### III.  <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits,
the court is limited to determining whether the decision was
supported by substantial evidence on the record and whether the
proper legal standard was applied in evaluating the evidence.  42
U.S.C. § 405(g); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir.
2001); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).
Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." <u>Richardson
v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co.
v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)).  It consists of "more than

a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).[6]

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  ANALYSIS

Plaintiff's brief identifies one error in the ALJ's decision that she claims warrants remand. She argues that the ALJ "failed to properly evaluate the opinion of treating Psychiatrist William

---

[6] The standard of review provided herein addresses the concerns raised in Plaintiff's Reply, (ECF No. 16, at 1-2).

McDaniel." Pl.'s Mem. (ECF No. 13, at 1).  The Commissioner argues that substantial evidence supports ALJ's evaluation of Dr. McDaniel's opinion, and that the ALJ "properly explained why he did not find persuasive Dr. McDaniel's outlier checkbox opinion." Def.'s Opp'n (ECF No. 15, at 2).  As explained below, this Report finds that the ALJ adequately evaluated Dr. McDaniel's opinions and the other medical opinion evidence in the record.  Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

A.   **Framework for SSA Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d).  As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423 (d)(1)(A); accord 20 C.F.R. § 404.1505(a).  An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful

24

activity that exists in the national economy.   See 42 U.S.C. §
423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use
to make their determination. 20 C.F.R. § 404.1520 (a)(4).
Specifically, the regulations direct the ALJ to answer the
following five questions:

1.   Is the individual involved in substantial gainful
activity?

2.   Does the individual suffer from a severe impairment
or a combination of impairments that meets the
durational requirement and significantly limits his
or her physical or mental ability to do basic work
activities?

3.   Does the individual suffer from an impairment(s)
that meets or equals a listing in 20 C.F.R. Pt. 404,
Subpt. P, App. 1 (a "listed impairment") and meets
the durational requirement?

4.   Does the individual's impairment or combination of
impairments prevent him or her from performing any
relevant past work?

5.   Does the individual's impairment or combination of
impairments prevent him or her from performing any
other work?

An affirmative answer to question one, or a negative answer
to questions two, four, or five, means the claimant is not
disabled.   An affirmative answer to questions three or five
establishes disability.   The claimant bears the burden of proof
during the first four steps; if the analysis reaches step five,
the burden shifts to the Commissioner to show that other work

25

suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.    The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 32). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: disorders of the skeletal spine, depression, migraine, osteoarthrosis, fibromyalgia, posttraumatic stress disorder, and obesity. Id. At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments

that met or medically equaled the severity of one of the listed impairments. (R. 33–37). The ALJ then developed a finding regarding Plaintiff's RFC. (R. 37). He determined Plaintiff was able perform light work with the following limitations:

> the claimant can only occasionally climb stairs, stoop, kneel, and crouch. She can never climb ladders or crawl. She can have no more than frequent exposure to extreme cold, heat, or wetness and humidity. She can have no exposure to sustained, loud noises, or to bright lights. She can have no more than occasional exposure to vibration, to fumes, gases or pulmonary irritants, or to workplace hazards such as unprotected heights or dangerous machinery. She can frequently but not always reach overhead with the left arm, and only occasionally with the right dominant arm. She can frequently but not always twist the lumbar spine, i.e., the lower back. The claimant is limited to standing or walking up to four hours total in an eight-hour workday. She is limited to performing only nonproduction-paced tasks as to tempo and capacity, which means only non-assembly line work. She is limited to maintaining a persistent effort on only routine tasks. She must have reasonable access to restrooms such as on the same floor or in an office setting.

Id. At step four, the ALJ concluded that Plaintiff could not perform past relevant work. (R. 46). At step five, the ALJ found work in the national economy Plaintiff could perform and therefore found that she was not disabled. (R. 46–47).

## C. The ALJ's Evaluation of the Opinion Evidence in the Record Complies with the Controlling Regulations and is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred by improperly evaluating Dr. McDaniel's medical opinion. Pl.'s Mem. (ECF No. 13, at 1, 9–16). The Commissioner argues that the ALJ's evaluation of the

opinion evidence was proper and supported by substantial evidence. Def.'s Opp'n (ECF No. 15, at 1-2, 16-24). Because the ALJ's evaluation of Dr. McDaniel's opinion was appropriate and consistent with SSA regulations, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

### 1. The ALJ properly evaluated the medical opinion from Dr. McDaniel.

Under the applicable regulations,[7] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). Supportability evaluates whether a medical source supports his or her opinion with "objective medical evidence and supporting explanations," § 404.1520c(c)(1), while consistency evaluates whether "evidence from other medical sources and nonmedical sources" also supports the source's opinion, § 404.1520c(c)(2).

---

[7] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff protectively filed her claims on February 26, 2020, (R. 127), the new rules apply.

When evaluating a medical opinion under these rules, the ALJ cannot "cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Bilotta v. Saul, 850 F. App'x 162, 169 (4th Cir, 2021) (quoting Lewis, 858 F.3d at 869); see also Apr. R.D. v. Saul, No. 2:20-cv-210, 2021 WL 3260072, at *9 (E.D. Va. June 29, 2021) (recommending remand because the ALJ "selectively cherry-picked unrepresentative evidence"), R. & R. adopted by 2021 WL 3215093 (E.D. Va. July 29, 2021). Cherry-picking occurs when an ALJ focuses on "a single treatment note that purportedly undermines [the source's] overall assessment of [the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)).

Here, when explaining her RFC determination, the ALJ stated that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. 37). Then, assessing Dr. McDaniel's opinion specifically, the ALJ found the opinion unpersuasive because it was "not consistent with or not supported by the evidence of record," including Dr. McDaniel's "own treatment records." (R. 45). The ALJ then identified specific areas where Dr. McDaniel's opinion lacked consistency and supportability. Id. He explained that "evidence of record shows the claimant generally

has normal mental status exam findings with the exception of occasional or depressed mood." Id. (citing Exhibits 2F, 8F, 10F, 13F, 19F, and 24F). The ALJ also explained that "[t]he provider's own treatment records [] show the claimant volunteers outside of her home, participates in group without difficulty, and travels to visit family [and] friends in Colorado, Florida, and West Virginia. Id. (citing Exhibits 10F, 13F, 19F, and 24F). The ALJ also referenced Plaintiff's own reports of activity and the lack of limitation during sessions. Id.

Plaintiff contends that the ALJ failed to analyze consistency and supportability as required by § 404.1520c(b)(2). Id. Specifically, Plaintiff contends that the ALJ's discussion of the record is incorrect and based on a "selective reading" designed "to reach his conclusion" regarding Plaintiff's limitations. Id. at 12. In support of that position, Plaintiff argues that the ALJ cherry-picked evidence and directs the Court to portions of the record she believes were overlooked or ignored. Id. at 11-12. Specifically, Plaintiff highlights Dr. McDaniel's treatment notes documenting her "mental status examinations [which] consistently revealed altered affect and mood." Id. at 11. Further, Plaintiff points to Dr. McDaniel's treatment notes which "constantly show Plaintiff's insight was remarkable for use of displacement, dissociation, and/or isolation of affect as defense mechanisms." Id.

Plaintiff also argues the ALJ's "supportability analysis is problematic" for various reasons. Id. at 11–12. First, Plaintiff attacks the ALJ's reliance on evidence of her travels to undermine Dr. McDaniel's opinion. Id. at 12. Plaintiff contends that the ALJ's analysis contravenes Fourth Circuit authority in Shelley C. v. Comm'r of Soc. Sec. Admin. Id.; No. 21-2042, 2023 WL 2147306 (4th Cir. Feb. 22, 2023). According to Plaintiff, the Fourth Circuit in Shelley C. "remanded where the ALJ improperly relied on a claimant's ability to travel as a reason for denial of disability," and failed to consider the claimant's surrounding statements. Pl.'s Mem (ECF No. 13, at 12). Likewise, here, Plaintiff contends that the ALJ improperly relied on Plaintiff's trip to Colorado and "omitted important circumstances and objective findings from the same treatment note." Id.

Further, in regard to the ALJ's supportability analysis, Plaintiff argues the ALJ improperly relied on her ability to engage in group therapy when considering her social limitations. Id. at 13. According to Plaintiff, "[a]n ALJ must evaluate stress in terms of its effect on the claimant's ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and deal with changes in a routine work setting." Id. (emphasis added) (quoting Hicklin-Jones v. Colvin, No. 3:14-CV-584, 2-15 WL 8958542, at *6 (W.D.N.C. Dec. 15, 2015)). Plaintiff contends that

the group therapy sessions "are nowhere reconstructive of a routine work setting," and thus the ALJ erred in relying on the group therapy as evidence of Plaintiff's capabilities.  Pl.'s Mem. (ECF No, 13, at 13).

Finally, Plaintiff argues the ALJ did not specify which claimant's reports he relied on in finding that Dr. McDaniel's opinion was inconsistent with, and not supported by the record. Id. at 14.  Plaintiff contends the ALJ failed to mention any of these individual reports and that "[t]his is problematic as Plaintiff's self-reports during sessions were supportive and consistent with Dr. McDaniel's opinion."  Id.  In other words, Plaintiff argues the ALJ did not specifically identify where Plaintiff's reports differed from Dr. McDaniel's opinion, and instead provided a "conclusory statement" that is unreviewable by this Court because it lacks an explanation.  Id. at 15.

In contrast, the Commissioner argues that the ALJ properly considered Dr. McDaniel's opinion and reasonably concluded that it was unpersuasive because it was inconsistent with other record evidence and unsupported by Dr. McDaniel's own treatment notes." Def.'s Opp'n (ECF No. 15, at 18).  The Commissioner contests "Plaintiff's attempts to undermine the ALJ's conclusions about the evidence."  Id. at 21.  Specifically, the Commissioner first disputes Plaintiff's reliance on Shelley C. to discount the ALJ's social interaction findings.  Id.  Contrary to Plaintiff's

argument, the Commissioner notes that Shelley C. "stands for the unremarkable proposition that the ALJ may not ignore relevant contextual evidence when drawing conclusions about a claimant's participation in a particular activity." Id. at 22. The Commissioner believes the ALJ's analysis properly considered the relevant context of Plaintiff's statements, and thus the ALJ's decision was proper under the regulations. Id. The Commissioner points to the ALJ's analysis that "Plaintiff reported that on multiple occasions she traveled to see friends and family and to vacation." Id. Based on this analysis, the ALJ did not "did not use the fact that Plaintiff may have enjoyed vacationing or visiting family as a basis for discounting simultaneous complaints of mental health symptoms," but instead "the ALJ found that her ability to travel self-evidently showed that she could, in fact travel, which undermined Dr. McDaniel's opinion to the contrary." Id.

The Commissioner further disputes Plaintiff's contention that the ALJ improperly relied on evidence of Plaintiff's participation in group therapy to conclude Plaintiff can function in a work environment, arguing that the ALJ considered the group therapy in conjunction with other activities Plaintiff undertook, "including her volunteering outside her home for charity and travel, that undermined Dr. McDaniel's social and adaptation limitation opinion." Id. at 23.

Finally, the Commissioner disputes Plaintiff's argument that the ALJ failed to sufficiently identify the evidence he relied upon in reaching his conclusion that Dr. McDaniel's opinion was unpersuasive. Id. Here, the Commissioner argues the ALJ sufficiently supported his conclusion with citations to the record, including references to Dr. McDaniel's treatment notes which reflect Plaintiff's ability to travel and volunteer outside her home." Id. Therefore, according to the Commissioner, this Court can logically follow the ALJ's reasoning and conclusion. Id.

For the reasons explained below, and on the factual record presented in this case, I agree with the Commissioner. The ALJ began his discussion of Dr. McDaniel's opinion by noting that Dr. McDaniel found Plaintiff "has marked limitations working near others without distraction and responding to appropriate to stress." (R. 45). The ALJ also noted that Dr. McDaniel found Plaintiff "has extreme limitations traveling in unfamiliar places, using public transportation, and setting goals independently." Id.

Notwithstanding Plaintiff's arguments to the contrary, the ALJ addressed the supportability and consistency of Dr. McDaniel's opinion as required by 20 C.F.R. § 404.1520c(b)(2), and concluded that the opinion was unpersuasive because it was not supported by Dr. McDaniel's treatment notes and not consistent with other

evidence in the record. Regarding supportability, the ALJ noted that Dr. McDaniel's medical source statement, which dictates that Plaintiff has "extreme limitations traveling in unfamiliar places, using public transportation, and setting goals independently," was inconsistent with his own treatment notes that Plaintiff "volunteers outside of her home, participates in group without difficulty, and travels to visit family [and] friends in Colorado, Florida, and West Virginia." Id. Although the ALJ referenced these notes with a general citation to Exhibits 10F, 13F, 19F, and 24F, he had explored and considered the notes in great detail when assessing Dr. McDaniel's opinion, and in the general discussion regarding the basis for his RFC determination. (See R. 40-44). For example, considering Exhibit 10F, the ALJ highlighted treatment notes stating, "claimant was playing with her new puppy and working on getting healthy," as well as that "she travelled to Colorado" and "is more active and volunteering outside of her home." (R. 40-41) (citing R. 1338). The ALJ also reviewed treatment notes in Exhibit 19F, and considered Plaintiff's report that she was able to do yardwork, walk in IKEA, take vacations to Florida and West Virginia, and report on occasion no depression. Id. (citing R. 1745-46, 1762, 1778, 1826-27). Additionally, the ALJ examined Exhibit 24F, and observed treatment notes wherein Plaintiff reported attending a unit reunion, shared that she was attending a concert, and noted that she was planning a trip to

35

Florida for later that year. (R. 41-42) (citing R. 2855, 2927).
Regarding consistency, the ALJ noted correctly that Plaintiff's
mental examinations with various providers were consistently
unremarkable. (R. 45) (citing Exhibits 2F, 9F, 10F, 13F, 19F, and
24F). The ALJ's discussion of this evidence demonstrates that he
sufficiently considered the supportability and consistency of Dr.
McDaniel's opinion as require by the SSA regulations.

Similarly, the Court is not persuaded by Plaintiff's argument
that the ALJ cherry-picked or relied on "an overly selective
reading of the record," to support his conclusion that Dr.
McDaniel's opinion is unpersuasive. Pl.'s Mem. (ECF No. 13, at
11). Instead, in reaching his conclusion, the ALJ relied on
evidence that was representative of the record as a whole. In
fact, as the foregoing recitation of her mental health treatment
demonstrates, it is Plaintiff asking the Court to cherry-pick facts
that support a finding contrary to the ALJ's determination. The
ALJ thoroughly detailed the medical record in support of his RFC
and highlighted numerous pieces of evidence contradicting the
conclusions in Dr. McDaniel's opinion. (R. 40-45). For example,
the ALJ recounted that Plaintiff in March 2020 reported "playing
cornhole and socializing." (R. 40). Later, in November 2020, the
ALJ noted that Plaintiff reported she "was playing with her new
puppy and working on getting healthy." (R. 40). Further, the ALJ
opined that Plaintiff's treatment notes recount vacations,

including trips to Colorado, Florida, and West Virginia.  (R. 45).

The ALJ also outlined various occasions where Plaintiff's mental

status exams were normal, including throughout 2019, 2020, and

2021.  (R. 39-42).  For instance, treatment notes from 2019 include

appointments where Plaintiff denied depression or manic symptoms,

(R.  690),  and  Plaintiff  was  alert,  oriented,  cooperative,

pleasant,  and  able  to  relate  well  (R.  397,  405,  410,  747).

Similarly,  in  2020,  Plaintiff's  treatment  notes  recount  normal

mental  status  exams  except  for  some  reports  of  anxiety  or

depression,  (R.  594,  1031),  and  Plaintiff  was  consistently  alert,

oriented,  cooperative,  pleasant,  and  able  to  relate  well  (R.  594,

1031,  1101).   In  2021,  treatment  notes  show  Plaintiff  denied

depressive or manic symptoms, (R. 1603), and occasionally reported

depression but otherwise had normal mental exam findings (R. 1827,

2927).  All of these facts – and others cited by the ALJ – support

the ALJ's conclusion that Dr. McDaniel's opinion imposing marked

and extreme limitations was unpersuasive.

     The ALJ's analysis is also consistent with the opinion in

Shelley C.  Pl.'s Mem. (ECF No. 13, at 12); No. 21-2042, 2023 WL

2147306.  Plaintiff, citing Shelley C., argues the ALJ improperly

excluded  the  context  surrounding  her  trip  to  Colorado,  and

specifically  erred  by  ignoring  Dr.  McDaniel's  treatment  notes

stating, "Plaintiff went to Colorado to obtain cannabinoids to

help with her pain and emotional regulation."  Pl.'s Mem. (ECF No.

13, at 12). However, here, the Court agrees with the Commissioner that the ALJ did not "take Plaintiff's activities out of context," but highlighted the inconsistencies between Plaintiff's reports of frequent, independent travel with Dr. McDaniel's finding that she has "extreme" limitations in her "ability to travel in unfamiliar places or use public transportation." Def.'s Opp. (ECF No. 15, at 22); (R. 3115); see (R. 1338) (describing Plaintiff's recent trip to Colorado); (R. 1762) (indicating Plaintiff was on vacation in West Virginia during her telehealth appointment); (R. 1778) (indicating Plaintiff was on vacation in Florida during the telehealth appointment). In citing these activities, the ALJ reasonably found that Dr. McDaniel's opinion was inconsistent with other evidence in record.

In addition, the ALJ did not improperly rely on Plaintiff's ability to engage in group therapy as evidence of her ability to act in a work setting. Pl.'s Mem. (ECF No. 13, at 23). Here, Plaintiff mischaracterizes the ALJ's analysis. The ALJ simply recounted Plaintiff's participation in group therapy as one of many activities she undertook outside of her home. (R. 45).

Finally, it bears mention that the ALJ did impose a fairly restrictive RFC which accommodated Plaintiff's mental limitations to the extent they were supported by evidence. The ALJ found that Plaintiff can "perform light work as defined in 20 CFR 404.1567(b)," but specifically limited Plaintiff "to performing

only nonproduction-paced tasks as to tempo and capacity, which means only non-assembly line work." (R. 37). Further, "[s]he is limited to maintaining a persistent effort on only routine tasks." Id.

Overall, reversal is not warranted simply because the record contains evidence which could support a conclusion opposite from the one reached by the ALJ. The court must defer to the ALJ's findings if those findings are supported by substantial evidence. Perales, 402 U.S. at 390; see also Lewis, 858 F.3d at 865. This appeal is not an opportunity to relitigate the case. If "conflicting evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then the court defers to the ALJ. Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). Because the ALJ's opinion here is supported by substantial evidence, the court does not consider whether the evidence might also support an alternative finding.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 12), and AFFIRM the final decision of the Commissioner.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

September 5, 2023